STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

|  |  |
|---|---|
| CELLINO LAW LLP, and CELLINO & BARNES, P.C., | <u>AMENDED COMPLAINT</u> |
| Plaintiff, | Index No.: 804192/2023 |
| -v- | |
| GOLDSTEIN GRECO, P.C., BRIAN GOLDSTEIN, ESQ., and ALEXANDER GRECO, ESQ., | *Hon. Timothy J. Walker, Presiding* |
| Defendants. | |

Plaintiffs Cellino Law LLP ("Cellino Law") and Cellino & Barnes, P.C. ("C&B") (each a "Plaintiff" and collectively "Plaintiffs"), by and through their undersigned counsel, for their amended complaint against Defendants Goldstein Greco, P.C., Brian Goldstein, Esq., and Alexander Greco, Esq. (each a "Defendant" and collectively "Defendants"), state and allege:

<u>INTRODUCTION</u>

1. The instant matter arises from: (a) Defendants' improper and illicit solicitation and pirating of Plaintiffs' clients upon leaving the employ of Cellino Law (the "Solicited Cases"); (b) Defendants' tortious conduct, including breach of contract, in pirating the Solicited Cases; (c) the settlement of one or more of the Solicited Cases—including one captioned *Terah Jackson, as Administrator of the Estate of Ronald Winans, Deceased v. Newfane Rehabilitation & Health Center*, Niagara County Index No. E169868/2019 (the "Winans Matter"); (d) Defendants' erroneous attempt to discharge the valid charging liens held by Cellino Law and C&B for work performed on the Winans Matter; and (e) Plaintiffs' right for said charging liens to be established pursuant to Judiciary Law § 475.

2.      Simply put, Defendants have engaged in a pattern of tortious conduct intended to deprive Plaintiffs of legal fees and costs rightly due and owing to Cellino Law and C&B and siphon those funds for their own gain.

PARTIES

3.      Plaintiff Cellino Law is, and at all relevant times has been, a law firm and limited liability partnership organized and existing under the laws of the State of New York with a principal office maintained for the purpose of transacting business at 800 Delaware Avenue, Buffalo, New York 14209.

4.      Plaintiff C&B is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with a prior principal office maintained for the purpose of transacting business in the State of New York.

5.      Cellino Law is a successor to C&B and has obtained the right to enforce liens or claims to attorney's fees that belonged to C&B including as to certain of the Solicited Cases, including, but not limited to, the Winans Matter.

6.      Upon information and belief, Defendant Goldstein Greco, P.C., is, and at all relevant times has been, a law firm and professional corporation organized and existing under the laws of the State of New York with a principal office maintained for the purpose of transacting business at 2354 Wehrle Drive, Buffalo, New York 14221.

7.      Upon information and belief, Defendant Brian Goldstein, Esq., is, and at all relevant times has been, an attorney admitted to practice law in the State of New York and is a principal of Goldstein Greco, P.C.

- 2 -

8.     Upon information and belief, Defendant Alexander Greco, Esq., is, and at all relevant times has been, an attorney admitted to practice law in the State of New York and is a principal of Defendant Goldstein Greco, P.C.

9.     Brian Goldstein, Esq. was previously employed as an attorney by Cellino Law and C&B.

10.    Alexander Greco, Esq., was previously employed as an attorney by Cellino Law and C&B.

JURISDICTION & VENUE

11.    Venue is proper in Erie County pursuant to CPLR § 503, including, but not limited to, pursuant to Section 503(c) as the parties are New York domestic corporations, authorized to transact business within the State of New York, and maintain offices for the purpose of transacting business within Erie County.

12.    This litigation seeks both declaratory judgment and damages exceeding the jurisdictional limits of all lower courts.

13.    This Court has jurisdiction over Defendants pursuant to Article 3 of the CPLR.

FACTS

I.     Overview of C&B and the C&B dissolution.

14.    C&B was a personal injury law firm performing legal services in the State of New York, among other states.

15.    Defendants Goldstein and Greco were employees of C&B.

16.    Defendant Goldstein entered into an employment agreement with C&B, a copy of which is annexed hereto as *Exhibit 1*.

17.     Defendants Goldstein and Greco remained employed with C&B until it ceased operating as a law firm on or around October 17, 2020.

18.     C&B ceased operating as a law firm after a special proceeding was commenced in 2017 seeking the dissolution of C&B, captioned *Cellino v. Cellino & Barnes, P.C., et al.*, Erie County Commercial Division Index No. 806178/2017 (the "Dissolution Proceeding").

19.     After years of substantial litigation, on January 28, 2020, one of two Stipulated Orders of Dissolution was entered and filed by the Honorable Deborah A. Chimes, J.S.C., a copy of which is annexed hereto as *Exhibit 2* (the "First Order of Dissolution"), Ordering, among other things:

> that Cellino & Barnes, P.C. shall be dissolved voluntarily and its business affairs wound up in accordance with Article 10 of the New York Business Corporation Law . . .

Ex. 3 (also available via NYSCEF, Dissolution Proceeding Doc. 327).

20.     Rather self-evidently, the First Order of Dissolution did not equate to a legal dissolution of C&B as an entity, but rather an Order that C&B would be dissolved in the future pursuant to a winding down process. *See id.*

21.     This is particularly true as C&B is still an entity existing pursuant to the laws of the State of New York for the purposes of winding up the corporation's affairs.

22.     Indeed, C&B continued to operate as a fully operational law firm for months after the First Dissolution Order was entered. The parties to the Dissolution Proceeding engaged in substantial, and confidential, settlement negotiations to effectuate the winding down process, which occurred contemporaneously with C&B's continued operations.

23.     Part of the winding-up process includes ensuring that the two successor firms of C&B—Cellino Law and The Barnes Firm, P.C. ("The Barnes Firm")—will properly compensate C&B for the work it performed on behalf of its clients.

24.     One of the crucial components of winding down C&B is ensuring the fair and equitable split of fees that results from any liens C&B is entitled to for cases for which it was counsel of record prior to dissolution.

25.     The parties to the Dissolution Proceeding were able to agree to terms, which ultimately resulted in the Court entering a second Stipulated Order of Dissolution, a copy of which is annexed hereto as *Exhibit 3* (the "Second Dissolution Order").

26.     The Second Dissolution Order, entered June 18, 2020, Ordered, in pertinent part:

> That Cellino & Barnes will be entitled to assert attorneys charging liens on cases that transfer to other firms, and that as to cases that transfer to either the new Cellino firm [Cellino Law] or the new Barnes firm [The Barnes Firm], Cellino & Barnes shall be entitled to a lien determined pursuant to the following "Quantum Meruit Calculation," namely that as to any transferred case, Cellino & Barnes will be entitled to a percentage of the attorneys' fee equivalent to the ratio of time the new firm retained the case compared to Cellino & Barnes. . . . This court specifically approves the "Quantum Meruit Calculation" as a fair and equitable way to determine the appropriate attorney's lien amount pursuant to Judiciary Law section 475.

Ex. 4 (also available via NYSCEF, Dissolution Proceeding Doc. 342).

27.     Accordingly, while C&B ceased operating as a law firm in October 2020, it still exists as a corporate entity, with a right to liens on its cases, as evidenced by Court Order.

28.     Furthermore, C&B's successor firms, Cellino Law and The Barnes Firm, continue to represent the C&B clients' interests pursuant to the terms of the dissolution.

29.     The C&B clients were properly informed of their right to choose counsel and subsequently elected new counsel after C&B ceased operating as a law firm—most of whom elected to select either Cellino Law or The Barnes Firm as their new counsel.

30.     As such, as of October 17, 2020, Cellino Law began serving as counsel for a large percentage of former C&B clients.

II.     Defendants' Employment Post Dissolution

31.     Cellino Law began operating as a personal injury law firm in October 2020. Most of its attorneys and staff were formerly employed by C&B, having elected to proceed with Cellino Law after C&B ceased operating as a law firm (the other C&B employees having largely selected to be employed by The Barnes Firm).

32.     Two of the attorneys who elected to proceed with Cellino Law were Defendants Goldstein and Greco.

33.     On June 27, 2020, Defendant Greco entered into an employment agreement with Cellino Law, a copy of which is annexed hereto as *Exhibit 4*.

34.     On June 30, 2020, Defendant Goldstein entered into an employment agreement with Cellino Law, which was subsequently amended, in part, on June 27, 2021, a copy of which is annexed hereto as *Exhibit 5*.

35.     Also on June 30, 2020, Cellino Law agreed to provide Defendant Goldstein with a demand loan in the amount of $300,000 (the "Loan") with simple interest equal to the short-term Applicable Federal Rate, such that the rate was the lowest rate permitted by the Internal Revenue Code without imputation of interest.

36.     Defendant Goldstein executed a Demand Note ("Note") for the Loan, promising to repay to Cellino Law the principal sum of $300,000 and interest on the unpaid portion of the principal sum, a copy of which is annexed hereto as *Exhibit 6*.

37.     As set forth in Goldstein's employment agreement, Cellino Law agreed to forgive one-third of the original amount of the Note, as taxable compensation to Goldstein, on each anniversary of the Effective Date of the employment agreement. *See* Ex. 6. Defendant Goldstein was required to pay any outstanding balance due under the Loan within 30 days of any termination of his employment at Cellino Law. *See id.*

38.     Pursuant to the Note, Defendant Goldstein further agreed to pay to Cellino Law on demand all reasonable costs and expenses (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice or litigation) incurred by Cellino Law in endeavoring to: (1) collect any amount owing pursuant to the Note in the event of a default; or (2) preserve or exercise any right or remedy pursuant to the Note. *See* Ex. 7.

39.     On December 24, 2020, Cellino Law forgave $100,000.00 of the Loan balance, leaving a principal balance of $200,000.00.

40.     No further payment was made on the Loan's principal.

41.     Despite his contractual obligation to do so, Defendant Goldstein did not pay the outstanding balance due under the Loan within thirty (30) days of the end of his employment at Cellino Law.

42.     As a result of Defendant Goldstein's failure to pay the outstanding balance due under the Loan, Cellino Law has been, and continues to be, damaged, in an amount to be proven at trial, but no less than the outstanding principal balance of $200,000.00, plus interest, attorney's fees, costs, and disbursements.

III.    Overview of Cellino Law Post Dissolution

43.    Initially, most, if not all, of Defendant Goldstein's and Defendant Greco's caseloads at Cellino Law were prior C&B cases.

44.    However, during their tenure with Cellino Law, Defendants Goldstein and Greco were also assigned to work on cases that Cellino Law retained after C&B ceased its operations (the "Cellino Law Exclusive Cases").

45.    Defendants Goldstein and Greco worked for Cellino Law for nearly two years.

46.    In that time, Defendants Goldstein and Greco were made privy to and obtained certain of Plaintiffs' confidential and proprietary information, business secrets, and work product (collectively "Confidential Information") by exploiting the confidential, trusting, and loyal relationship with Plaintiffs. Such information was provided to Defendants Goldstein and Greco in confidence pursuant to that confidential relationship.

47.    The confidential and proprietary information, business secrets, and work product obtained by Defendants Goldstein and Greco (and subsequently misappropriated by Defendants, as further alleged below) belonged to both Cellino Law and C&B.

48.    As a successor to C&B, Cellino Law was provided certain rights to C&B's confidential and proprietary information, business secrets, and work product (the remainder of such rights being provided to The Barnes Firm as the other successor to C&B).

49.    Unbeknownst to Plaintiffs at the time, Defendants Goldstein and Greco were misappropriating Plaintiffs' resources, property, and Confidential Information in a duplicitous plot to create a competing firm, including planning and executing a campaign of illicit solicitation of Plaintiffs' clients (consisting of both C&B clients and Cellino Law clients).

IV.    Defendants' pre-resignation surreptitious soliciting of C&B and Cellino Law Cases.

50.    On or around August 26, 2022, a client of Cellino Law hand delivered a signed retainer agreement to Cellino Law's office; the retainer agreement was on the letterhead of and for "Goldstein Greco, P.C."

51.    This retainer demonstrated that Defendants had started their own law firm and evidently intended to leave Cellino Law.

52.    After investigating the new firm, Cellino Law learned that Defendants formed Goldstein Greco, P.C., by filing with the Department of State over a month prior, on July 19, 2022. A copy of the Department of State filing is annexed hereto as *Exhibit 7.*

53.    Defendant Goldstein's and Defendant Greco's employment with Cellino Law terminated no later than September 30, 2022.

54.    Ultimately, Plaintiffs learned that prior to that termination, Defendants Goldstein and Greco had been: (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs and their shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with, and to the detriment of, Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from

Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

55.     For instance, prior to notifying Cellino Law of their impending resignation, Defendants drafted and circulated a letter to certain of Plaintiffs' clients that was sent on Goldstein Greco, P.C. letterhead (the "Pre-Resignation Solicitation").

56.     In addition to being an improper pre-resignation surreptitious solicitation, the Pre-Resignation Solicitation was improper for a variety of other reasons, including:

    a.     Defendants misrepresented their status, equating themselves to Cellino Law;

    b.     Defendants misrepresented that they were moving the entire Cellino Law Mass Tort department to the newly established Goldstein Greco, P.C. firm;

    c.     Defendants misappropriated the goodwill and business reputation of Plaintiffs as their own; and

    d.     Defendants misappropriated and infringed upon valid trademarks owned and paid for by Plaintiffs.

57.     The August 26, 2022, hand delivery by a then-client of Cellino Law of an executed Goldstein Greco, P.C., engagement agreement was only further demonstrative of Defendants' pre-resignation surreptitious solicitation.

58.     Upon information and belief, Defendants had been secretly planning their separation from Cellino Law for months, during which time Defendants:

    a.     Continued to be appointed to Cellino Law's intake schedule for new clients, which Defendants intentionally did to pirate new clients to their to-be-formed firm and which Cellino Law would not have permitted to continue had it known about Defendants' wrongful conduct and plans to depart;

b.  Took, copied, and/or misappropriated Plaintiffs' work product to be used at Goldstein Greco, P.C.;

c.  Degraded and disparaged Cellino Law, its attorneys, and its leadership;

d.  Misrepresented the status of Cellino Law to current employees in an attempt to convince them to leave Cellino Law's employment;

e.  Directed client calls that came to Cellino Law's office to their personal and/or new firm contact information in an attempt to maintain secrecy of their pirating scheme;

f.  Ostensibly rejected cases on behalf of Cellino Law only to subsequently represent the client(s) so that Cellino Law had no purported claim to the file; and

g.  Took Cellino Law office supplies to set up Goldstein Greco, P.C.

59.  Shortly after confronting Defendants about their improper conduct, Plaintiffs became aware of an estimated 150 to 200 retainer agreements that had been obtained by Defendants of Plaintiffs' former clients.

60.  Upon information and belief, Defendants first targeted those of Plaintiffs' clients whom they believed to be the most valuable clients—in other words those whose cases had the highest estimated settlement/resolution value.

61.  It also became clear that Defendants delayed settling cases while employed at Cellino Law in an apparent attempt to gain entitlement to legal fees for which Goldstein Greco, P.C., had and has no right—one of which being the Winans Matter.

62.  Upon information and belief, Defendants have also attempted to settle matters without putting them into suit for the purpose of avoiding filing fees and common benefit fees associated with Mass Tort cases.

- 11 -

63.     As a result, many of the Solicited Cases are not publicly filed permitting Plaintiffs to monitor the same in order to pursue fees.

64.     Moreover, upon information and belief, Defendants redirected clients who contacted Cellino Law seeking representation by declining to commence representation on behalf of those clients with the intent to later sign those clients up for representation with Goldstein Greco.

V.     The Winans Matter.

65.     Terah Jackson, as administrator of the estate of Ronald Winans, initially retained C&B to represent her for Ronald Winans' wrongful death and/or conscious pain and suffering caused by the negligence of another.

66.     On September 18, 2018, Terah Jackson, as administrator of the estate of Ronald Winans, entered into a written retainer agreement with C&B, which set forth the terms of C&B's representation and professional relationship with Terah Jackson (hereinafter the "C&B Retainer").

67.     A true and accurate copy of the C&B Retainer is annexed hereto as *Exhibit 8*.

68.     The C&B Retainer provided, among other things, that C&B would be entitled to a contingency attorney's fee of one-third (1/3) of any settlement amount or recovery for the Winans Matter, before the subtraction of disbursements and/or expenses, as compensation for C&B's services on her behalf.

69.     On or around October 25, 2020, after the Order of dissolution of C&B and the creation of Cellino Law as one of the successors to C&B, Terah Jackson, as administrator of the estate of Ronald Winans, entered into a written retainer agreement with Cellino Law for representation in the Winans Matter, which set forth the terms of Cellino Law's representation and professional relationship with Terah Jackson (hereinafter the "Cellino Law Retainer"; the C&B

Retainer and Cellino Law Retainer hereinafter collectively referred to as the "Retainer Agreements").

70.     A true and accurate copy of the Cellino Law Retainer is annexed hereto as *Exhibit 9*.

71.     The Cellino Law Retainer provided, among other things, that Cellino Law would be entitled to a contingency attorney's fee of one-third (1/3) of any settlement amount or recovery for the Winans Matter, before the subtraction of disbursements and/or expenses, as compensation for Cellino Law's services on Ms. Jackson's behalf.

72.     Consistent with the retainer agreement and Cellino Law's and/or C&B's professional relationship with Terah Jackson, as administrator of the estate of Ronald Winans, Plaintiffs performed substantial services on Ms. Jackson's behalf, including but not limited to:

> a.     conducting an initial interview with the administrator;
>
> b.     investigating the circumstances of the accident;
>
> c.     identifying responsible parties;
>
> d.     investigating the nature and extent of injuries experienced by the decedent;
>
> e.     identifying and notifying insurance carriers that might provide coverage for the loss;
>
> f.     obtaining and analyzing relevant medical records;
>
> g.     extensively communicating with the administrator;
>
> h.     communicating with insurance carriers;
>
> i.     analyzing viable causes of action;
>
> j.     drafting and filing a summons and complaint;
>
> k.     completing discovery demands, including bills of particulars and supplementing bills of particulars;
>
> l.     conducting depositions;

m.    completing any necessary motion practice, expert consideration, and retention; and

n.    attending preliminary conferences, compliance conferences, and settlement conferences.

73.    On or about August 2, 2022, while the retained attorney/attorney of record was Cellino Law, the Winans Matter was settled in principle.

74.    The court of jurisdiction over the underlying litigation for the Winans Matter was advised of the settlement.

75.    Subsequently, Cellino Law was advised that it was discharged and that Terah Jackson had retained the Defendants.

76.    Defendants filed a consent to change attorney form on October 5, 2022.

77.    Both Cellino Law and C&B asserted a claim and lien to the attorney's fees received on the case and elected to be compensated on a percentage basis, based on the proportionate share of the work performed by each firm that had been retained.

78.    Upon information and belief, the Winans Matter has resolved and the settlement agreed to in August 2022 formally received court approval on November 16, 2022, with $137,500.00 in attorney's fees approved.

79.    Plaintiffs and Defendants have not agreed on the allocation of the attorney's fees received for the Winans Matter, including the repayment of disbursements incurred by Plaintiffs.

<u>FIRST CAUSE OF ACTION</u>
DECLARATION AND ESTABLISHMENT OF PLAINTIFFS' CHARGING LIEN
BY ALL PLAINTIFFS FOR THE WINANS MATTER

80.    Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to recover their due and owing attorneys' fees and legal costs.

81.    With respect to the statutory lien, New York Judiciary Law § 475 provides:

> From the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

82.     C&B commenced, appeared in, and engaged in substantial litigation in the Winans Matter.

83.     For instance, C&B:

   a.     retained the client in the first instance in September 2018;

   b.     commenced the Winans Matter on August 14, 2019, *see* Winans Matter Doc. 1;

   c.     filed the certificate of merit;

   d.     engaged in discussions and litigation practices on the matter, including stipulations to extend time to answer, and filing RJIs;

   e.     litigated a motion to strike, *see* Winans Matter Doc. 5;

   f.     served demands for a verified bill of particulars, omnibus discovery demands, and cross notices of examination before trial to defense;

   g.     responded to discovery demands served by the defense, including issuing supplemental responses;

   h.     attended preliminary conferences with the court; and

   i.     defended the plaintiff's deposition.

84.     C&B therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law.

85. After the Order of dissolution of C&B, Cellino Law was retained for, appeared in, and engaged in substantial litigation in the Winans Matter.

86. For instance, Cellino Law:

    a. served good faith letters and sought the correction or production of deficient and/or supplemental discovery responses;

    b. engaged in motion practice;

    c. served supplemental discovery demands upon the defense;

    d. attended preliminary conferences;

    e. conducted depositions of witnesses;

    f. served a third, fourth, fifth, and sixth round of discovery demands to the defense;

    g. attended a virtual hearing with the court; and

    h. negotiated the settlement of the dispute, including agreeing to terms in principle pending court approval.

87. Cellino Law therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law.

88. After Defendant Goldstein and Defendant Greco terminated their employment, Cellino Law received notification that Terah Jackson had retained Defendant Goldstein Greco, P.C. to substitute as counsel for the Winans Matter.

89. However, that transfer of representation does nothing to diminish or alter Plaintiffs' charging lien.

90. Plaintiffs' charging lien came "into existence, without notice or filing, upon commencement of the action or proceeding." *LMWT Realty Corp. v. Davis Agency*, 85 N.Y.2d 462, 467-68 (1995).

91.     Upon information and belief, the Winans Matter was resolved, and the settlement that had been agreed to in August 2022 was formally received, with court approval, on November 16, 2022, with $137,500.00 in attorney's fees approved.

92.     Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to obtain the value of their services based on the proportionate share of the work performed by each of them and the Defendants, meaning that each firm should obtain a percentage of the attorney's fee representing its proportionate share of the work performed by each firm on the whole case.

93.     C&B is entitled to recover a percentage of the $137,500.00 that represents its proportionate share of the work performed while it was counsel of record (the "C&B Winans Share").

94.     Cellino Law is entitled to recover a percentage of the $137,500.00 that represents its proportionate share of the work performed while it was counsel of record (the "Cellino Law Winans Share").

95.     Defendants are not entitled to receive any portion of fees.

96.     Plaintiffs are also entitled to recover the total amount of disbursements incurred during their respective representation in the Winans Matter.

97.     Plaintiffs have incurred a combined total of outstanding disbursements due and owing in the amount of $11,671.92 in the Winans Matter, which should be reimbursed to Plaintiffs out of the settlement approved by the court (the "Winans Disbursements").

98.     Due to the amount of work performed by Plaintiffs on the Winans Matter, compared to the minimal work performed by Defendants, as well as the bad-faith conduct engaged in by Defendants, the Court should apportion the entire $137,500.00 to Plaintiffs to represent the C&B

Winans Share, Cellino Law Winans Share, and Winans Disbursements, with no portion of the fees being paid to the Defendants (to the extent there remains any amount apportioned to Defendants, said amount is hereinafter referred to as the "Defendants' Share").

99.     Therefore, Plaintiffs are entitled to judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the full $137,500.00 attorneys' fees recovered in the Winans Matter; or (ii) in the alternative, an amount of $11,671.92 for disbursements plus an amount to be apportioned quantum meruit to each Plaintiff for past and current attorneys' fees due and owing for the Winans Matter.

SECOND CAUSE OF ACTION
DECLARATION AND ESTABLISHMENT OF PLAINTIFFS' CHARGING LIEN
BY ALL PLAINTIFFS FOR THE SOLICITED CASES

100.     Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to recover their due and owing attorneys' fees and legal costs.

101.     C&B commenced, appeared in, and engaged in substantial litigation in certain of the Solicited Cases.

102.     C&B therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for certain of the Solicited Cases.

103.     After the Order of dissolution of C&B, Cellino Law was retained for, appeared in, and engaged in substantial litigation in the Solicited Cases. In some cases, Cellino Law also commenced certain of the Solicited Cases.

104.     Cellino Law therefore has a valid and enforceable charging lien pursuant to New York Judiciary Law § 475 and New York common law for each and every Solicited Case.

105.     In or around August 2022, Cellino Law received notification that Defendants had engaged in an illicit campaign of soliciting and poaching Plaintiffs' cases and that the clients

- 18 -

represented in the Solicited Cases had retained Defendant Goldstein Greco, P.C., to substitute as counsel.

106.     However, that transfer of representation does nothing to diminish or alter Plaintiffs' charging liens for any of the Solicited Cases.

107.     Plaintiffs' charging liens came "into existence, without notice or filing, upon commencement of the action or proceeding." *LMWT Realty*, 85 N.Y.2d at 467-68.

108.     Upon information and belief, many, if not all of, the Solicited Cases (with the exception of the Winans Matter) have not been resolved to date.

109.     However, even prior to resolution, Plaintiffs have a common law right and/or a statutory lien pursuant to Judiciary Law § 475 to obtain the value of their services based on the proportionate share of the work performed by each of them and the Defendants, meaning that each firm should obtain a percentage of the attorney's fee representing its proportionate share of the work performed by each firm on the whole case.

110.     C&B is entitled to recover a percentage of the ultimate award in each Solicited Case that represents its proportionate share of the work performed while it was counsel of record (the "C&B SC-Share").

111.     Cellino Law is entitled to recover a percentage of the ultimate award in each Solicited Case that represents its proportionate share of the work performed while it was counsel of record (the "Cellino Law SC-Share").

112.     Plaintiffs are also entitled to recover the total amount of disbursements incurred during their respective representation in the Solicited Cases.

113. Plaintiffs have incurred a combined total of outstanding disbursements due and owing in the Solicited Cases in an amount exceeding $400,000.00, which should be reimbursed to Plaintiffs by Defendants (the "SC-Disbursements").

114. Therefore, Plaintiffs are entitled to judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the SC-Disbursements and (ii) an additional amount to be apportioned to each Plaintiff for past and current attorneys' fees due and owing for each Solicited Case, to be determined upon the resolution of each case.

THIRD CAUSE OF ACTION
BREACH OF CONTRACT – EMPLOYMENT AGREEMENT
BY CELLINO LAW AGAINST ALL DEFENDANTS

115. Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

116. Defendants Goldstein and Greco entered into employment agreements with Cellino Law to serve as employee-attorneys and provide legal services to Cellino Law's clients (the "Cellino Law Employment Agreements") and, in return for which, Cellino Law was required to compensate Defendants Goldstein and Greco pursuant to the terms set forth therein.

117. The Cellino Law Employment Agreements were and are valid and binding contracts.

118. Defendants breached the express and implied terms of the Cellino Law Employment Agreements by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights

with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

119. As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, Cellino Law has suffered and will continue to suffer substantial monetary damages.

120. Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

121. Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

122.    Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

123.    Accordingly, Plaintiff Cellino Law is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

FOURTH CAUSE OF ACTION
BREACH OF CONTRACT – EMPLOYMENT AGREEMENT, RESTRICTIVE COVENANTS
BY C&B AGAINST ALL DEFENDANTS

124.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

125.    Defendants Goldstein and Greco entered into employment agreements with C&B to serve as employee-attorneys and provide legal services to C&B clients (the "C&B Employment Agreements") and, in return for which, C&B was required to compensate Defendants Goldstein and Greco pursuant to the terms set forth therein.

126.    The C&B Employment Agreements were and are valid and binding contracts.

127.    Plaintiff C&B performed under the C&B Employment Agreements.

128.    Defendant Goldstein's written C&B Employment Agreement contains express and implied terms which remain in full force and effect to date, despite the Dissolution Proceeding and subsequent employment of Defendant Goldstein by Cellino Law.

129.    Defendant Greco's C&B Employment Agreement contains implied terms which remain in full force and effect to date, despite the Dissolution Proceeding and subsequent employment of Defendant Greco by Cellino Law.

130. Specifically, C&B remains a legal entity and the contracts it interred into remain in full force and effect except to the extent the contracting party was intentionally released by C&B, which Defendants Goldstein and Greco were not.

131. Defendants breached the express and implied terms of the C&B Employment Agreements by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of certain of C&B's clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) abandoning C&B's contracted partner, Cellino Law, on short notice and taking the client files; (v) failing to maintain and spoliating Plaintiffs' records in the process; (vi) absconding with and misappropriating Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; trading off of and misappropriating C&B's name, likeness, and good business reputation; (viii) engaging in self-interested transactions to the injury of Plaintiffs; and (ix) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

132. As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, C&B has suffered and will continue to suffer substantial monetary damages.

133. Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

134. Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

135. Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.

136. Accordingly, Plaintiff C&B is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

FIFTH CAUSE OF ACTION
BREACH OF CONTRACT – THIRD-PARTY BENEFICIARY
BY C&B AGAINST ALL DEFENDANTS

137. Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

138. At all relevant times, Defendants Goldstein and Greco had valid and binding contracts with Cellino Law—the Cellino Law Employment Agreements.

139. The Cellino Law Employment Agreements have both express and implied terms for the intended benefit of third parties, including C&B.

140. Among such intended benefits was the performance of legal work for clients (at a level and standard, and pursuant to certain ethical considerations, as C&B felt would benefit its clients), for which C&B would receive a portion of any legal fee compensation procured.

141. The intended benefit to C&B, both express and implied, demonstrates that the contracting parties assumed a duty to compensate C&B if its benefit was lost.

- 24 -

142.    For instance, C&B and Cellino Law entered a separate contract to ensure the continued representation of legal clients in the aftermath of the Dissolution Proceeding in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

143.    This contract contained specific compensation terms and a waterfall provision to ensure the fair remuneration to C&B for Cellino Law's right to seek retention by certain of C&B's clients.

144.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts and had specialized knowledge thereof as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

145.    Moreover, Defendants had actual and specialized knowledge of C&B's status as an intended third-party beneficiary under the Cellino Law Employment Agreements.

146.    Notwithstanding, Defendants solicited various clients to breach their contract with Cellino Law so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

147.    Defendants breached the express and implied terms of the employment contracts with Cellino Law by, among other things, (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with

Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

148.    As an intended third-party beneficiary to the Cellino Law Employment Agreements, C&B has the right to enforce the Cellino Law Employment Agreements and to seek full benefits as provided thereunder or otherwise seek redress as necessary for Defendants' breaches.

149.    As a direct and proximate cause of Defendant Goldstein's and Defendant Greco's conduct, C&B has suffered and will continue to suffer substantial monetary damages.

150.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

151.    Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

152.    Accordingly, Plaintiff C&B is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

SIXTH CAUSE OF ACTION
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING –
EMPLOYMENT AGREEMENTS
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

153.     Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

154.     New York law provides that every contract contains an implied covenant of good faith and fair dealing.

155.     Both the Cellino Law Employment Agreements and the C&B Employment Agreements contain an implied covenant of good faith and fair dealing.

156.     Pursuant to the implied covenant of good faith and fair dealing, even if not specifically stated in the contract(s), it is implied or understood that each party to the contract(s) must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract(s).

157.     To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the reasonable expectations of the parties.

158.     A party must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits of the contract(s).

159.     Defendants aforesaid conduct, as fully set forth in this Amended Complaint as a whole, breached the implied covenant of good faith and fair dealing in the Cellino Law Employment Agreements and C&B Employment Agreements.

160.     As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have suffered, and will continue to suffer, substantial monetary damages.

- 27 -

161.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

162.    Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

163.    Defendant Goldstein's and Defendant Greco's wrongful conduct is imputed upon Defendant Goldstein Greco, P.C.—the law firm they created to aid them in breaching their contract and to compete with Cellino Law.

164.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

SEVENTH CAUSE OF ACTION
BREACH OF DUTY OF LOYALTY (FAITHLESS SERVANT DOCTRINE)
BY CELLINO LAW AGAINST ALL DEFENDANTS

165.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

166.    As employees, agents, and representatives of Plaintiffs, Defendants Goldstein and Greco each had a duty of loyalty to Plaintiffs Cellino Law and C&B.

167.    The duty of loyalty required Defendants to exercise the utmost good faith and loyalty in the performance of their duties for Plaintiffs.

168. Defendant Goldstein's and Defendant Greco's duty of loyalty required them to dedicate all of their professional time, labor, skill, attention, and ability to the success and wellbeing of Plaintiffs and to not take actions inconsistent with Plaintiffs' interests.

169. Defendants Goldstein and Greco breached their duty of loyalty by using time, efforts, facilities, and resources while employees, agents, and representatives of Plaintiffs, and drawing salaries from Plaintiffs, to discuss, negotiate, plan, conspire, and start a competitive business as well as to surreptitiously solicit Plaintiffs' clients pre-resignation.

170. Defendants Goldstein and Greco breached said duty of loyalty to Plaintiffs by, among other things: (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including their time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

171.    As a direct and proximate result of Defendants' breaches, Plaintiffs have suffered, and will continue to suffer, substantial monetary damages.

172.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

173.    Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

174.    Defendants' improper activities have also caused and will continue to cause irreparable harm to Plaintiffs by, among other things, causing them to lose and damaging client relationships that they spent substantial time and resources developing and by diminishing Plaintiffs' goodwill and reputation in the legal industry.

175.    Therefore, Plaintiffs seek judgment against Defendants for all damages caused by their breach of the duty of loyalty including (i) directing Defendants, any of their agents, representatives, affiliates, employees, and anyone acting in concert with them or under their control to return any of Plaintiffs' Confidential Information or property they possess; (ii) enjoining Defendants from using Plaintiffs' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

EIGHTH CAUSE OF ACTION
BREACH OF FIDUCIARY DUTIES
BY CELLINO LAW AGAINST ALL DEFENDANTS

176.     Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

177.     As an attorney with Plaintiffs, Defendants Goldstein and Greco owed a fiduciary duty to Plaintiffs Cellino Law and C&B.

178.     Defendants Goldstein and Greco breached said fiduciary duty to Plaintiffs by, among other things: (i) engaging in pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients for personal gain; (ii) misappropriating Plaintiffs' assets, including its time and resources, to create a competing firm and engage in said pre-resignation solicitation and pirating of clients; (iii) misinforming those clients about their rights with respect to choice of counsel; (iv) misrepresenting to Plaintiffs' shareholders, partners, attorneys, and personnel about their plans to leave; (v) abandoning Plaintiffs on short notice and taking the client files; (vi) failing to maintain and spoliating Plaintiffs' records in the process; (vii) absconding with Plaintiffs' Confidential Information, as well as using that Confidential Information in competition with and to the detriment of Plaintiffs; (viii) engaging in self-interested transactions to the injury of Plaintiffs; (ix) failing to advance the interest of Plaintiffs while still employed therewith, including, but not limited to, intentionally stalling settlements until after their departure from Plaintiffs' employ; (x) mismanaging Plaintiffs' affairs; and (xi) engaging in, upon information and belief, improprieties during the departure from Plaintiffs' employ as well as their solicitation and pirating of clients.

179.     Defendants' breach of their fiduciary duties to Plaintiffs caused the Plaintiffs to be injured, including, but not limited to monetary damages as well as equitable relief.

- 31 -

180.    Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

181.    Plaintiffs' damages also include, but are not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

182.    Therefore, Plaintiffs seek judgment against Defendants for all damages caused by their breach of their fiduciary duties including (i) directing Defendants, any of their agents, representatives, affiliates, employees, and anyone acting in concert with them or under their control to return any of Plaintiffs' Confidential Information or property they possess; (ii) enjoining Defendants from using Plaintiffs' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

NINTH CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH CONTRACT
BY CELLINO LAW AGAINST ALL DEFENDANTS

183.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

184.    Cellino Law has had and continues to have contracts with various legal clients throughout New York and the United States.

185.     In many instances, these contracts first arose between C&B and the client; however, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to pursue and seek to enter into contracts with certain of C&B's clients.

186.     Cellino Law did, in fact, enter into contracts with certain of C&B's clients as well as certain of its own clients.

187.     Defendants had knowledge of the contracts Cellino Law entered into with its and C&B's clients.

188.     Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

189.     Defendants solicited various clients to breach their contract with Cellino Law so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

190.     Defendants intentionally interfered with the contracts between Cellino Law and its clients.

191.     As a direct and proximate result of Defendants' tortious interference with contract, Cellino Law has suffered and will continue to suffer substantial monetary damages.

192.     Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

193.     Accordingly, Plaintiff Cellino Law is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

## TENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACT
### BY C&B AGAINST ALL DEFENDANTS

194.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

195.    C&B and Cellino Law entered into a contract to ensure the continued representation of legal clients in the aftermath of the Dissolution Proceeding in an effective and ethical fashion and to ensure the best overall result on behalf of the clients.

196.    Since these contracts first arose between C&B and the client, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to pursue and seek to enter into contracts with certain of C&B's clients.

197.    The contract entered into between C&B and Cellino Law provided inherent benefit to C&B, both in terms of monetary value and assurances of proper handling of clients' matters.

198.    Defendants had knowledge of the contract entered between C&B and Cellino Law, including the terms, details, and specifications set forth therein.

199.    Defendants, having been employed by C&B and Cellino Law, were made aware of these contracts as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

200.    Defendants engaged in tortious conduct, including, but not limited to, (i) soliciting various clients to terminate their relationship with Cellino Law, (ii) breaching Defendants' own contracts with Cellino Law, and (iii) misrepresenting information and facts to various clients so that Defendants could obtain the clients' legal work for Defendants' own personal gain.

201.    Defendants intentionally interfered with the contract between C&B and Cellino Law.

202.   As a direct and proximate result of Defendants' tortious interference with contract, C&B has suffered and will continue to suffer substantial monetary damages.

203.   Plaintiffs' damages include, but are not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

204.   Accordingly, Plaintiff C&B is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

ELEVENTH CAUSE OF ACTION
UNFAIR COMPETITION AND MISAPPROPRIATION
BY PLAINTIFFS AGAINST ALL DEFENDANTS

205.   Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

206.   Defendants converted Plaintiffs' Confidential Information and property unlawfully and without authorization while employed at Cellino Law.

207.   Defendants have retained that Confidential Information and property after their employment was terminated and in their business operations of Goldstein & Greco P.C.

208.   Defendants interfered with Plaintiffs' right to their Confidential Information and property.

209.   Moreover, Defendants misappropriated the fruits of Plaintiffs' labors, skills, and expenditures through deceptive acts and/or abuse of Defendants' fiduciary and confidential relationship with Plaintiffs by obtaining and using Plaintiffs' Confidential Information and property that was developed over the course of many years.

210.    Defendants obtained Plaintiffs' Confidential Information and property by exploiting the confidential, trusting, and loyal relationship with Plaintiffs while Defendants Goldstein and Greco were employees, agents, and representatives of Plaintiffs, and when such information was provided to Defendants in confidence pursuant to that confidential relationship.

211.    As a direct result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, in an amount to be determined at trial, including consequential damages, harm to their reputation and goodwill, costs, expenses, and other losses. This irreparable injury includes, but is not limited to, irreversible disruption of attorney-client relationships

212.    Defendants' pre-resignation surreptitious solicitation and pirating of Plaintiffs' clients, along with all conduct engaged in to effectuate the same, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce and in the furnishing of services to consumers and therefore a violation of New York Law.

213.    Likewise, Defendants' pre-resignation surreptitious solicitation and pirating of Plaintiffs' potential clients, along with all conduct engaged in to effectuate the same, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce and in the furnishing of services to consumers and therefore a violation of New York Law.

214.    Upon information and belief, Defendants' acts were done with knowledge of this violation of law and were done in bad faith.

215.    It would be unjust and inequitable for Defendants to retain the benefit of such misappropriation and unfair competition without making restitution to Plaintiffs.

216.    Therefore, Plaintiffs seek judgment against Defendants for all damages caused by their unfair competition and misappropriation including (i) directing Defendants, any of their agents, representatives, affiliates, employees, and anyone acting in concert with them or under

their control to return any of Plaintiffs' Confidential Information or property they possess; (ii) enjoining Defendants from using Plaintiffs' Confidential Information or property; and (iii) awarding judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

TWELFTH CAUSE OF ACTION
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP
BY CELLINO LAW AGAINST ALL DEFENDANTS

217.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

218.    Cellino Law has had and continues to have business relationships with various legal clients throughout New York and the United States.

219.    In many instances, these business relationships first arose between C&B and the client; however, C&B and Cellino Law entered into an agreement whereby Cellino Law would have the right to assume certain of C&B's business relationships.

220.    Defendants, having been employed by C&B and Cellino Law were made aware of these business relationships as a result of both their confidential status and relationship with Plaintiffs and their unique involvement in the disputes that arose during the Dissolution Proceeding.

221.    Defendants misappropriated the information obtained in and through these confidential relationships with Plaintiffs and improperly solicited clients to terminate their business relationships with Cellino Law for Defendants' own personal gain.

222.    Defendants used confidential information, trade secrets, and proprietary business practices, learned exclusively from Plaintiffs and as a result of their confidential relationship with

Plaintiffs, to induce clients to terminate their business relationship with Cellino Law for Defendants' own personal gain.

223.    Defendants also used confidential information, trade secrets, and proprietary business practices, learned exclusively from Plaintiffs and as a result of their confidential relationship with Plaintiffs, to induce potential clients to forego a business relationship with Cellino Law for Defendants' own personal gain.

224.    Defendants used improper means that amount to independent torts to interfere with Cellino Law's aforementioned business relationships.

225.    Defendants' interference with Cellino Law's aforementioned business relationships was also conducted through means and methods that, at a minimum, misrepresented information to clients in order to induce them to terminate their business relationship with Cellino Law.

226.    Defendants' interference with Cellino Law's aforementioned business relationships caused injury to Plaintiffs, including to Cellino Law's relationship with those clients.

227.    Accordingly, Plaintiff Cellino Law is entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

<u>THIRTEENTH CAUSE OF ACTION</u>
COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

228.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

229.    C&B owns valid and enforceable trademark rights in certain trademarks, including, but not limited to, "Cellino & Barnes" and "Cellino and Barnes" (the "C&B Marks") and enjoys common law rights in the State of New York and through the United States.

230. Cellino Law owns valid and enforceable trademark rights in certain trademarks, including, but not limited to, "Cellino Law" and "Car Crash Call Cellino" trademarks (the "Cellino Marks") and enjoys common law rights in the State of New York and throughout the United States.

231. The C&B Marks and Cellino Marks (collectively "Plaintiffs' Marks") are the result of extensive costs expended to advertise and create public recognition in the trademarks.

232. Plaintiffs' Marks are inherently distinctive as it pertains to legal services.

233. Plaintiffs' Marks have also acquired distinctiveness and secondary meaning.

234. Plaintiffs' Marks are famous as they relate to personal injury legal services— especially in Western New York.

235. Defendants improperly, illicitly, and without authorization utilized Plaintiffs' Marks in soliciting clients, including, without limitation, Plaintiffs' existing clients.

236. This illicit solicitation occurred, at a minimum, in Defendants' Pre-Resignation Solicitation.

237. Plaintiffs' Marks were used in commerce in connection with personal injury legal services, and Defendants' use of Plaintiffs' Marks is likely to cause confusion, mistake, or an association in the minds of the public and prospective clients.

238. Defendants' use of Plaintiffs' Marks in commerce in connection with personal injury legal services is likely to lead the public and prospective clients to believe that Defendants' services are those of Plaintiffs or are endorsed, sponsored, or otherwise affiliated or connected with Plaintiffs.

239. Defendants' activities as stated herein constitute unfair competition and trademark infringement of Plaintiffs' common law trademark rights in Plaintiffs' Marks.

240.  Plaintiffs each have the exclusive right to use their respective Plaintiffs' Marks in commerce in connection with legal services, including, without limitation, personal injury legal services and related services.

241.  Upon information and belief, actual confusion exists on behalf of clients as a result of Defendants' marketing and use of Plaintiffs' Marks in Defendants' solicitations.

242.  Defendants, without Plaintiffs' consent, used, and upon information and belief, will use and intend to continue to use Plaintiffs' Marks in connection with the sale, offering for sale, distribution, solicitation, and/or advertising of identical legal services, which is likely to cause confusion or mistake or otherwise deceive consumers in violation of New York law.

243.  Upon information and belief, Defendants' acts were done with knowledge of their violation of law and were done in bad faith.

244.  As a result of Defendants' infringement, Plaintiffs suffered and will continue to suffer damages, including lost sales, profits, and goodwill.

245.  Defendants' unauthorized use of Plaintiffs' Marks caused irreparable injury to Plaintiffs' reputation and goodwill. Upon information and belief, unless restrained and enjoined, Defendants will continue to infringe on Plaintiffs' rights and Plaintiffs lack a remedy at law adequate to redress the harm Defendants have caused and will continue to cause until their conduct is restrained.

246.  Defendants' actions are willful, intentional and constitute an exceptional case.

247.  Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

## FOURTEENTH CAUSE OF ACTION
### USE OF NAME WITH INTENT TO DECEIVE UNDER N.Y. GEN. BUS. LAW § 133
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

248.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

249.    Defendants, with intent to deceive or mislead the public, have used for advertising, soliciting, and trade purposes, Plaintiffs' names, or simulation or part thereof, which may deceive or mislead the public as to the identity of the persons comprising of Defendants and their association with Plaintiffs.

250.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be determined at trial, plus interest and costs, and if Defendants' conduct is allowed to continue and is not enjoined, Plaintiffs and their goodwill and reputation will continue to suffer immediate, substantial, ongoing, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

## FIFTEENTH CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICES UNDER N.Y. GEN. BUS. LAW § 349
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

251.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

252.    Defendants' use of Plaintiffs' Marks to promote, market, solicit, or sell services, including, upon information and belief, via written correspondence, constitutes a deceptive act or practice in the conduct of Defendants' business, trade, or commerce and in the furnishing of services to consumers and is therefore a violation of N.Y. Gen. Bus. Law § 349.

253.    Defendants, through their unlawful conduct, have caused a likelihood of confusion as to the source, sponsorship, affiliation, connection, association, or approval of Plaintiffs by or with Defendants and their conduct and/or representation.

254.    Plaintiffs have been damaged by Defendants' acts complained of in an amount to be determined at trial, and if Defendants' conduct is allowed to continue, Plaintiffs and their goodwill and reputation will continue to suffer immediate, substantial, and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

255.    Defendants' materially misleading practice of using Plaintiffs' Marks to identify services provided by Defendants is likely to cause the consuming public at large to be misled as to the true source, sponsorship, affiliation, or approval of the services offered by Defendants and is likely to deceive the public and/or cause confusion or mistake to consumers.

256.    Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, plus interests and costs, and injunctive relief prohibiting Defendants from using Plaintiffs' Marks or any other trade name, trademark, service mark or domain name that is identical or substantially similar to Plaintiffs' Marks, a mark that is otherwise likely to be confused with Plaintiffs' Marks or otherwise unfairly competing with Plaintiffs. Without preliminary and permanent injunctive relief, Plaintiffs have no means by which to control the continuing injury to the reputation and goodwill associated with Plaintiffs Marks. No amount of money damages can adequately compensate Plaintiffs if they suffer damage to their reputations and associated goodwill through the false and unauthorized use by Defendants of Plaintiffs' Marks.

## SIXTEENTH CAUSE OF ACTION
UNJUST ENRICHMENT
BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

257.    Plaintiffs repeat and reallege the allegations set forth above with the same force and effect as if fully set forth hereafter and incorporated herein.

258.    Defendants engaged in unjust and inequitable conduct whereby Defendants have been enriched to the detriment of Plaintiffs.

259.    Defendants have been enriched under circumstances which were unjust and inequitable.

260.    It would be unjust and inequitable for Defendants to retain the benefit of such enrichment without making restitution to Plaintiffs.

261.    Defendants' unjust enrichment includes, but is not limited to, any portion of the attorneys' fees awarded for the Winans Matter and/or Solicited Cases that may be apportioned to Defendant Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have been recovered by Plaintiffs.

262.    Defendants' unjust enrichment also includes, but is not limited to, any portion of the attorneys' fees that may be apportioned to Defendant Goldstein Greco, P.C., on any cases that Defendants intentionally declined to sign up at Cellino Law for the purpose of signing those cases up at Goldstein Greco, P.C., which, but for Defendants' wrongful conduct, would have resulted in recovery by Plaintiffs.

263.    Accordingly, Plaintiffs are entitled to judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest and costs.

## SEVENTEENTH CAUSE OF ACTION
BREACH OF THE DEMAND NOTE
BY CELLINO LAW AGAINST DEFENDANT GOLDSTEIN

264.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

265.    The Demand Note is a valid, binding, and enforceable contract between Cellino Law and Defendant Goldstein, satisfying the elements of offer, acceptance, consideration, mutual assent, and intent to be bound, under which Cellino Law materially performed its obligations.

266.    Pursuant to the Note, Defendant Goldstein agreed to repay to Cellino Law the principal sum of $300,000 and interest on the unpaid portion of the principal sum on demand by Cellino Law.

267.    Defendant Goldstein breached the Note by failing to pay the outstanding balance due on the Loan after his resignation from Cellino Law.

268.    As a result of the foregoing breach of contract, Cellino Law is entitled to damages, in an amount to be proven at trial, but no less than the outstanding balance of $200,000, plus interest, attorney's fees, costs, and disbursements.

## EIGHTEENTH CAUSE OF ACTION
BREACH OF THE CELLINO LAW EMPLOYMENT AGREEMENT
BY CELLINO LAW AGAINST DEFENDANT GOLDSTEIN

269.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

270.    The Employment Agreement is a valid, binding, and enforceable contract between Cellino Law and Defendant Goldstein, satisfying the elements of offer, acceptance, consideration, mutual assent, and intent to be bound, under which Cellino Law materially performed its obligations.

- 44 -

271.    Pursuant to the Employment Agreement, Defendant Goldstein agreed to pay Cellino Law any outstanding balance due on the Loan within 30 (thirty) days of his resignation from Cellino Law or the termination of his employment with Cellino Law.

272.    Defendant Goldstein breached the Employment Agreement by failing to pay the outstanding balance due on the Loan after his resignation from Cellino Law.

273.    As a result of the foregoing breach of contract, Cellino Law is entitled to damages, in an amount to be proven at trial, but no less than the outstanding balance of $200,000, plus interest, attorney's fees, costs, and disbursements.

NINETEENTH CAUSE OF ACTION
UNJUST ENRICHMENT
BY CELLINO LAW AGAINST DEFENDANT GOLDSTEIN

274.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

275.    The Loan constitutes a benefit conferred upon Defendant Goldstein by Cellino Law.

276.    Defendant Goldstein realized this benefit by accepting the Loan.

277.    By failing to repay the outstanding balance due on the Loan upon his resignation from Cellino Law or the termination of his employment with Cellino Law, Defendant Goldstein has retained the benefit of the Loan at Cellino Law's expense, and without just compensation to Cellino Law.

278.    As a result of the foregoing, Defendant Goldstein has been enriched at Cellino Law's expense, and it would be unjust and inequitable to permit Defendant Goldstein to retain the benefit of the Loan without repayment.

279.     As a result of Defendant Goldstein's unjust enrichment, Cellino Law is entitled to damages in an amount to be proven at trial, but no less than the outstanding principal balance of $200,000, plus interest, attorney's fees, costs, and disbursements.

CONCLUSION

WHEREFORE, Plaintiffs Cellino Law LLP and Cellino & Barnes, P.C., demand judgment against Defendants Goldstein Greco, P.C., Brian Goldstein, Esq., and Alexander Greco, Esq., following a judicial (non-jury) hearing to be held, as follows:

(1)     On the First Cause of Action, judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the full $137,500.00 attorneys' fees recovered in the Winans Matter; or (ii) in the alternative, an amount of $11,671.92 for disbursements plus an amount to be apportioned quantum meruit to each Plaintiff for past and current attorneys' fees due and owing for the Winans Matter;

(2)     On the Second Cause of Action, judgment declaring and establishing a valid and enforceable charging lien for both C&B and Cellino Law, in accordance with Judiciary Law § 475: (i) for the SC-Disbursements and (ii) an amount to be apportioned quantum meruit to each Plaintiff for past and current attorneys' fees due and owing for each Solicited Case, to be determined upon the resolution of each case

(3)     On the Third Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(4)     On the Fourth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(5)     On the Fifth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(6)     On the Sixth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(7)     On the Seventh Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(8)     On the Eighth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(9)     On the Ninth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(10)    On the Tenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(11)    On the Eleventh Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(12)    On the Twelfth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(13)    On the Thirteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(14)    On the Fourteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(15)    On the Fifteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(16)    On the Sixteenth Cause of Action, judgment against Defendants in an amount to be proven at trial, but not less than the jurisdictional limits of this Court, plus interest;

(17)    On the Seventeenth Cause of Action, judgment against Defendant Goldstein in an amount to be proven at trial but in no event less than $200,000.00, plus interest, attorney's fees, costs, and disbursements;

(18)    On the Eighteenth Cause of Action, judgment against Defendant Goldstein in an amount to be proven at trial but in

- 47 -

no event less than $200,000.00, plus interest, attorney's fees, costs, and disbursements;

(19)    On the Nineteenth Cause of Action, judgment against Defendant Goldstein in an amount to be proven at trial but in no event less than $200,000.00, plus interest, attorney's fees, costs, and disbursements; and

(20)    The costs and disbursements associated with this action together with all such other and further relief as this Court finds just and proper.

Dated:    Buffalo, New York
June 28, 2023

DUKE HOLZMAN PHOTIADIS & GRESENS LLP

By:    s/ *Christopher M. Berloth*
    Christopher M. Berloth
    *Attorneys for Plaintiff*
    *Cellino & Barnes, P.C.*
    701 Seneca Street, Suite 750
    Buffalo, New York 14210
    Tel: (716) 855-1111
    cberloth@dhpglaw.com

HODGSON RUSS LLP

Julia Hilliker
*Attorneys for Plaintiff*
*Cellino Law LLP*
140 Pearl St. #100
Buffalo, New York 14202
Tel: (716) 848-1547
jhillike@hodgsonruss.com