STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

CELLINO LAW LLP and
CELLINO & BARNES, P.C.

                              Plaintiffs,

        v.

GOLDSTEIN GRECO, P.C.,
BRIAN GOLDSTEIN, ESQ. and
ALEXANDER GRECO, ESQ.,

                              Defendants.
                                                    Index No.: 804192/2023
_____

THE BARNES FIRM, P.C.

                              Plaintiff,

        v.

GOLDSTEIN GRECO, P.C.,
BRIAN GOLDSTEIN, ESQ. and
ALEXANDER GRECO, ESQ.,

                              Defendants.

_____


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINTS**


**WOODS OVIATT GILMAN LLP**
*Attorneys for Defendants*
William F. Savino, Esq.
1900 Main Place Tower
350 Main Street
Buffalo, New York 14202
(716) 248-3200
wsavino@woodsoviatt.com

{9293637:7 }

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

ARGUMENT ................................................................................................................................ 2

   I.   LEGAL STANDARD. ...................................................................................................... 2

   II.  PLAINTIFFS' COMPLAINT MUST BE DISMISSED BASED ON THE
       DOCUMENTARY EVIDENCE AS A MATTER OF LAW ............................................. 3

     A.  Plaintiffs' First Cause Of Action in the Complaints Must Be Dismissed Because New
        York Judiciary Law § 475 Expressly Requires A Petition. ............................................. 8

     B.  Plaintiffs Fail To State A Cause Of Action For Breach Of Contract............................. 9

     C.  Plaintiffs Fail to State A Cause Of Action For Breach Of Contract As A Third Party
        Beneficiary. .................................................................................................................. 11

     D.  Plaintiffs Fail To State A Cause Of Action for Tortious Interference with Contract. ... 12

     E.  CL's Twelfth Cause Of Action For Tortious Interference With Business Relationship
        Must Be Dismissed. ...................................................................................................... 14

     F.  CL and C&B's Fifteenth Cause Of Action Must Be Dismissed Because There Is No
        Private Right Of Action Under N.Y. Gen. Bus. Law § 349. ........................................ 16

     G.  Plaintiffs' Causes Of Action For Unjust Enrichment Are Duplicative Of The Breach Of
        Contract Claims And Must Be Dismissed. ................................................................... 17

CONCLUSION.......................................................................................................................... 18

CERTIFICATION OF COMPLIANCE WITH WORD COUNT LIMIT................................... 19

## TABLE OF AUTHORITIES

**Cases**

*119 Spring LLC v 119 Spring St. Co., LLC*, 2014 N.Y. Misc. LEXIS 2036
(N.Y. Sup. Ct. 2014) ................................................................................................. 14, 15

*34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44 (2022) ................................................. 9

*Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dep't 2009)........................... 14

*Amsterdam Hospitality Group, LLC v. Marshall-Alan Assoc., Inc.*, 120 A.D.3d 431
(1st Dep't 2014) ......................................................................................................... 2

*Aramid Entertainment Fund, Ltd. v. Wimbledon Financing Master Fund, Ltd.*, 105 A.D.3d 682
(1st Dep't 2013) ......................................................................................................... 16

*Badding v. Inglis*, 112 A.D.3d 1329 (4th Dep't 2013) .................................................... 17

*Barker v. Time Warner Cable Inc.*, 83 A.D.3d 750 (2d Dep't 2011) ............................... 10

*Basis Yield v. Goldman Sachs Grp.*, Inc., 115 A.D.3d 128 (1st Dep't 2014).................... 3

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004)................................................................ 16

*Cash on the Spot ATM Servs., LLC v Camia*, 144 A.D.3d 961 (2d Dep't 2016).................. 13

*Connaughton v. Chipotle Mexican Grill*, Inc., 29 N.Y.3d 137 (2017) ............................ 2

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (2012) .................................................... 17

*D.A.M. Prods., Inc. v Torres*, 2017 N.Y. Misc. LEXIS 4014 (N.Y. Sup. Ct. Oct. 18, 2017) ...... 16

*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704 (2018)................... 12

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 166 N.Y.2d 38 (1985)........................ 12

*Gibbs v. Breed Abbott & Morgan*, 271 A.D.2d 180 (1st Dep't 2000)................................... 11, 13

*Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561 (2005)............................................ 17

*Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y. 2d 112 (1st Dep't 1995) ....... 11, 13

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980)........................... 16

*Ivy League Sch., Inc. v. Danick Indus., Inc.*, 44 Misc. 3d 1223(A) (Sup. Ct., Suffolk County
2014) ......................................................................................................................... 17

*Jacobs v. Continuum Health Partners, Inc.,* 7 A.D.3d 312 (1st Dep't 2004)................................ 15

*Kraus v. Via Int'l Serv. Ass'n*, 304 A.D.2d 408 (1st Dep't 2003) ................................. 10

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996 ................................. 12

*Law Offs. of Ira H. Leibowitz v Landmark Ventures, Inc.*, 131 A.D.3d 583 (2d Dep't 2015) ..... 15

*Leon v. Martinez*, 84 N.Y.2d 83 (1994) ................................. 2

*M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488 (2d Dep't 1995) ................................ 15

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614 (1996) ................................. 15

*NRT Metals, Inc. v. Laribee Wire, Inc.*, 102 A.D.2d 705 (1st Dep't 1984)................................. 15

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d, 25 (1995)................................. 17

*Port Chester Elec. Constr. Corp v Atlas*, 40 N.Y.2d 652 (1976) ................................. 11

*Posner v. Lewis*, 18 N.Y.3d 566 (2012)................................. 16

*R&R Third Props. v. Greater N.Y. Mut. Ins. Co.*, No. 651377/2013, 2019 N.Y. Misc. LEXIS 4926 (Sup. Ct. Sept. 9, 2019)................................. 14

*Simkin v. Blank*, 19 N.Y.3d 46 (2012) ................................. 3

*Stuart's LLC v. Edelman*, 196 A.D.3d 711 (2d Dep't 2021) ................................. 15

*Taylor Bldg. Mgt., Inc. v. Global Payments Direct, Inc.*, 19 Misc. 3d 1133(A), 866 N.Y.S.2d 96 (Sup. Ct. Mar. 20, 2008) ................................. 14

*Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88 (1st Dep't 2009)................................. 15

*WFB Telecommunications v. NYNEX Corp.*, 188 A.D.2d 257 (1st Dep't 1992)................................. 15

*Williams v Citigroup, Inc*., 104 A.D.3d 521 (1st Dep't 2013)................................. 14

*Woodhill Elec. v. Jeffrey Beamish, Inc.*, 73 A.D.3d 1421 (3d Dep't 2010)................................. 10

## Statutes

CPLR § 3013 ................................................................................................................... 3

CPLR § 3211 ................................................................................................................... 2

CPLR § 3211(a)(1) ...................................................................................................... 2, 8

CPLR § 3211(a)(7) ................................................................................................ 2, 3, 12

CPLR § 402 ..................................................................................................................... 9

Judiciary Law § 475 .................................................................................................... 8, 9

N.Y. Gen. Bus. Law § 349 ...................................................................................... 16, 17

## Rules

New York Rules of Professional Conduct New York Rules of Professional Conduct Rule
5.6(a)(1) ................................................................................................................. 11

## Authorities

Assn of Bar of City of NY, Ethics Opn. 80- 65 (1982) ........................................... 11, 13

New York County Lawyers Assn, Ethics Opn. 679 (1991).................................... 11, 13

Defendants, Goldstein Greco, P.C. ("Goldstein Greco"), Brian Goldstein, Esq. ("Goldstein") and Alexander Greco, Esq. ("Greco") (collectively, "Defendants"), by counsel, for their Memorandum of Law in support of Defendants' Motion to Dismiss Plaintiffs' Complaint, state:

## **PRELIMINARY STATEMENT**

On March 31, 2023, Plaintiffs Cellino Law LLP ("CL") and Cellino & Barnes, P.C. ("C&B") commenced an action against Defendants bearing Index No. 804192/2023 by the filing of a Summons and Complaint.  CL and C&B filed an Amended Complaint (the "Cellino Complaint") in the same action on June 28, 2023.  Thereafter, on or about July 7, 2023, plaintiff The Barnes Firm, P.C. ("TBF") commenced an action against Defendants bearing Index No. 808360/2023 by the filing of a Summons and Complaint (the "TBF Complaint"). The Cellino Complaint and the TBF Complaint are referred to below as the "Complaints" CL, C&B, and TBF are referred to below collectively as "Plaintiffs." By Order dated August 25, 2023, the two actions were consolidated (the "Consolidation Order").

The Complaints are based wholly on the demonstrably false contention that Defendants have engaged in wrongful conduct during the course of their departure from Cellino Law LLP. The documentary evidence utterly refutes such allegations and demonstrates that Defendants collaborated with their former employer to ensure a smooth transition. The documentary evidence, including three emails from CL, conclusively establish a defense as a matter of law to all but the Seventeenth and Eighteenth causes of action in the Cellino Complaint.

Additionally, the Complaints must be dismissed for failure to state a cause of action.  The conclusory and vague allegations cannot withstand a motion to dismiss.  Plaintiffs fail to meet even the most basic pleading requirements for causes of action for breach of contract, tortious

{9293637:7 }

1

interference, unjust enrichment, among other causes of action. As such, Defendants cannot adequately defend against the allegations in the Complaints.

Accordingly, all but the Seventeenth and Eighteenth Cause of Action in the Cellino Complaint must be dismissed pursuant to CPLR §§ 3211(a)(1) and (7).

## STATEMENT OF FACTS

The facts relevant to this motion are more fully set forth in the Affidavit of Brian Goldstein, Esq., sworn to on August 29, 2023, with exhibits annexed thereto ("Goldstein Aff."), and are incorporated herein by reference.

## ARGUMENT

### I.    LEGAL STANDARD.

On a motion to dismiss pursuant to CPLR § 3211, the Court shall "accept the facts as alleged in the complaint as true, accord plaintiff[] the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." *Leon v. Martinez*, 84 N.Y.2d 83, 87-88 (1994). "At the same time, however, allegations consisting of bare legal conclusions are not entitled to any such consideration." *Connaughton v. Chipotle Mexican Grill*, Inc., 29 N.Y.3d 137, 141 (2017) (internal citations and quotations omitted).

A party may move for the dismissal of one or more causes of action asserted against it where "a defense is founded upon documentary evidence…." CPLR § 3211(a)(1). A motion to dismiss pursuant to CPLR § 3211(a)(1) must be granted where documentary evidence conclusively establishes a defense to the asserted claims as a matter of law. *Leon v. Martinez*, 84 N.Y.2d 83, 88 (1994); *Amsterdam Hospitality Group, LLC v. Marshall-Alan Assoc., Inc.*, 120 A.D.3d 431, 433 (1st Dep't 2014) (dismissal based on documentary evidence is proper if the evidence submitted

"utterly refutes" the factual allegations and "conclusively establishes a defense to the asserted claims as a matter of law"). Allegations that are "flatly contradicted by documentary evidence are not entitled to any such consideration." *Simkin v. Blank*, 19 N.Y.3d 46, 52 (2012). "When documentary evidence is submitted by a defendant the standard morphs from whether the plaintiff has stated a cause of action to **whether it has one**." *Basis Yield v. Goldman Sachs Grp.*, Inc., 115 A.D.3d 128, 135 (1st Dep't 2014) (emphasis added).

Further, under CPLR 3211(a)(7), "[d]ismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery." *Id*. at 142. Moreover, mere general assertions and references to statutes run afoul the pleading requirement of CPLR § 3013 requiring that "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense."

## II. PLAINTIFFS' COMPLAINT MUST BE DISMISSED BASED ON THE DOCUMENTARY EVIDENCE AS A MATTER OF LAW.

Plaintiffs' unverified Complaint herein are based wholly on the demonstrably false contention that Defendants have been "engaging in… improprieties during [their] departure from Plaintiffs' [CL] employ as well as their solicitation and pirating of clients." Three emails attached Goldstein's August 29, 2023 Affidavit as Exhibits D, F, and G utterly refute Plaintiffs' factual allegations, thereby conclusively establishing a defense as a matter of law (even without regard to the fact that such solicitation of clients is expressly ethical for departing attorneys) to all but the 17 of the 19 Causes of Action in the Cellino Complaint.

Exhibit D to the Goldstein Affidavit is the first of the three documents that utterly refute all but the Seventeenth and Eighteenth Causes of Action of the Cellino Complaint, i.e., the critical 3:29 PM, Wednesday, August 31, 2022 email (the "Confirmatory Email") from Ross M. Cellino ("Ross") to Goldstein confirming the terms of Goldstein and Greco's consensual separation from Cellino Law ("CL"). The Confirmatory Email from Ross, the principal of CL, destroys the allegations of the Complaints, cripples the credibility of the Plaintiffs, and reveals why they skipped the expected verification. The email is so central to the ruling on the Defendants' Motion to Dismiss that it warrants dissection sentence by sentence.

The first sentence of the Confirmatory Email states, "As a follow-up to our conversation, you and Alex will continue on CL's payroll till the end of this week." This sentence establishes that Ross and Goldstein had been negotiating the terms of Goldstein and Greco's separation from CL, and this "follow-up" was to memorialize those terms. Tellingly, Ross did not demand that Goldstein and Greco leave CL's premises, cease working on CL's files, or stop conducting client intake, each of which would be expected in a hostile separation.

The second sentence of the Confirmatory Email states, "Starting next week, you and Alex will be 'Of Counsel' to CL till September 30, 2022." This sentence establishes that Ross wanted to ensure a smooth and complete consensual separation of Goldstein and Greco from CL without public disclosure before October 2022 of Goldstein and Greco's withdrawal from CL.

The third sentence of the Confirmatory Email states, "During this time. You will work with Granit [Perzhita, "Granit"] to digitally copy the files that will be following you and Alex." This sentence establishes that Ross knew that Goldstein and Greco were taking numerous CL files with them in October 2022, consented thereto, and was assisting Defendants' taking the files by allowing a CL employee, paralegal Granit, to work on the information technology needs of Goldstein and Greco's separation at no expense to Defendants.

{9293637:7 }
4

The fourth sentence of the Confirmatory Email states, "You have agreed to take 100% of the Mass Tort files so that there will be no obligation of CL to follow up on any of Mass Tort files." This sentence establishes that CL was actively seeking to avoid any further obligation on the Mass Tort files because of the impending departure of Goldstein and Greco, the two then-remaining CL attorneys handling Mass Tort cases. Importantly, the sentence does not begin "you are taking 100%"; it begins "You have agreed," implying that Ross asked Goldstein and Greco to take 100% of the Mass Tort files (which he did), and they agreed to his request made on behalf of CL.

The fifth sentence of the Confirmatory Email states, "There are 600+ files that need to be attended to." This sentence establishes that Ross agreed that Goldstein and Greco were taking over attending to 600+ different CL client files, primarily Mass Tort cases as established below, and wanted them to do so.

The sixth sentence of the Confirmatory Email states, "Granit will stay on our payroll and if he does not follow you in your practice we will have a position available for him." This sentence establishes that Ross had no objection to Defendants' soliciting CL employees to join their practice. Furthermore, this sentence confirms that Granit remained on CL's payroll without any charge to Defendants while he was helping with Defendants' taking 600+ files.

The tenth sentence of the Confirmatory Email states, "For any cases that you settle through 9/30/22, you will receive your 10% commission on those cases even if the money and liens are not resolved by 9/30/22." This sentence establishes that Ross did not believe CL had any right of offset or recoupment against Goldstein or Greco by reason of their separation or taking 600+ files because he promised CL would continue paying their 10% commissions after separating from CL rather than applying any such commissions to alleged damages (of which there were none).

{9293637:7 }

5

Exhibit E to the Goldstein Affidavit, the standard "Letter From Firm and Departing Attorney" from the New York State Are Association website is noteworthy by the complete absence of any reference to it in the Confirmatory Email and/or in CL's (nonexistent) post-September 2022 communications to historical CL clients. The customary and normal way for a law firm losing attorneys to pursue retention of the clients with whom those attorneys worked is to send the established "Letter From Firm and Departing Attorney" or some similar correspondence. The fact that Ross and CL demonstrably did nothing to retain the 600+ files voluntarily taken from them by the Defendants PROVES that neither Ross nor CL wanted to or were able to retain the Mass Court cases after Goldstein and Greco left because, at CL in August 2022, only Goldstein and Greco had the skill set and experience to prosecute such Mass Tort actions with their convoluted procedure in United States District Courts across the United States as venued pursuant to the Multi District Litigation Panel (partially because Goldstein is trained as medical doctor and a lawyer).

Exhibit F to the Goldstein Affidavit is the second of the three documents that utterly refute all but the Seventeenth and Eighteenth Causes of Action, i.e., an exchange of emails between Ross and Goldstein, all on October 20, 2022, less than three weeks after Goldstein and Greco separated from CL, which exchange culminated in an agreement on CL and Defendants' allocation as to the medical malpractice cases (thereby taking the email string out of the ambit of CPLR 4547).

In Goldstein's 4:43 PM Thursday, October 20, 2022 email to Ross and his fellow CL attorney, Gregory J. Pajak, Esq., and Ross' daughter and CL's manager, Annemarie Cellino ("Annemarie"), Goldstein proposed a 60/40 allocation between CL and the Defendants on the medical malpractice cases which had followed the Defendants from CL.

Three minutes later, in his 4:46 PM Thursday, October 20, 2022 email back to Goldstein, Ross stated, "Yes to the 60/40 CL med mal cases." Ross having reached the foregoing October 20,

2022 agreement with the Defendants for this allocation as to the medical malpractice cases taken from CL is wholly inconsistent with Defendants having been "engaging in… improprieties during [their] departure from Plaintiffs' employ as well as their solicitation and pirating of clients."

Exhibit G to the Goldstein Affidavit is the third of the three documents that utterly refute all but the Seventeenth and Eighteenth Causes of Action, i.e., an email exchange that includes an email from David Blaszak, director of information technology at CL, to Alex, Ross, and Goldstein at 9:47 AM Tuesday, August 30, 2022, and Ross's reply thereto at 10:24 AM Tuesday, August 30, 2022.

In Mr. Blaszak's email, he is voluntarily giving Goldstein and Greco suggestions on a new cloud/web-based product and/or software package that would "cater to Mass Tort practices." Having copied his employer at CL it is obvious that Mr. Blaszak, while being compensated by CL, has been given its authority to help the Defendants take over CL's "unwanted" 600+ Mass Tort files.

In Ross' reply email he adds his daughter Annemarie to the string and reports her suggestion that the Defendants "should consider using drop box from Google." This email exchange supports the reality that without Goldstein and Greco, the two then-remaining CL attorneys who handled Mass Tort cases, the firm could no longer support the Mass Tort cases so Ross, Annemarie, and CL, generally, were actively helping the Defendants to transition 600+ Mass Tort files away from CL in a manner that best supported those 600+ Mass Tort files going with the Defendants to maximize the dollar recoveries for CL on its share of the eventual settlement proceeds.

Considering the multifarious agreements, admissions, and waivers in Defendants documentary evidence, Exhibits D, F, and G to the Goldstein Affidavit, how, under the standard of *Basis Yield v. Goldman Sachs Grp., Inc.*, supra, can Plaintiffs "**have**" causes of action for: A.

{9293637:7 }
7

Denying Defendants any charging lien on the 600+ cases they were allowed to take from CL; B.

Breach of Goldstein and Greco's CL and Cellino & Barnes employment agreements; C. Breach of

good faith and fair dealing; D. Breach of fiduciary and loyalty duties; E. Tortious interference with

contract/business relationship; F. Unfair competition/misappropriation; and unjust enrichment.

Under *Simkin v. Blank*, supra, the tortured and disingenuous allegations supporting the subject 17

Causes of Action in the Amended Complaint are "flatly contradicted by documentary evidence

[and] are not entitled to any such consideration."

Seventeen of the 19 Causes of Action in the Amended Complaint presuppose numerous

material facts utterly refuted by Defendants documentary evidence, Exhibits D, F, and G to the

Goldstein Affidavit, such as: 1. Defendants did not have Ross' consent to take the 600+ CL files;

2. Defendants took the 600+ CL files surreptitiously, "pirating" clients who New York allows to

freely choose counsel; 3. Defendants' taking the 600+ CL files was resisted by CL rather than

affirmatively and demonstrably assisted in their transition by it; and 4. No agreement, whatsoever,

was ever reached between CL and the defendants on the allocations between CL and Defendants

on the eventual recoveries on the underlying personal injury cases. The standards of CPLR 3211

(a) (1) have been met by the Defendants' documentary evidence, and every claim except the

Seventeenth and Eighteenth Causes of Action in the Cellino Complaint must be dismissed.


### III.   PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION.

#### A.   Plaintiffs' Causes of Action Under New York Judiciary Law § 475 Must Be Dismissed Because That Section Expressly Requires A Petition.

Judiciary Law § 475 governs an attorney's lien in an action, special or other proceeding

and provides that the attorney who appears for a party has a lien upon his or her client's cause of

action, claim or counterclaim, which attaches to a recovery in the client's favor and the proceeds

{9293637:7 }                                        8

thereof. Pursuant to Judiciary Law § 475: "[t]he court upon the ***petition*** of the client or attorney may determine and enforce the lien." Of course, petition refers to CPLR 402 and implies lien will be valued in a summary special proceeding instead of a plenary action.

In the instant PLENARY action, the Plaintiffs filed Summons and Complaints, involving multiple actions, assigned to various Justices in various Counties. Contrary to Judiciary Law § 475, which expressly requires a petition, either to commence a special proceeding, or to be filed with the court, the Plaintiffs filed Summons and Complaints. CL and C&B dramatically amended and expanded their original complaint, which sought a fee allocation determination in a single county court nursing home case, *Terah Jackson, as Administrator of the Estate of Ronald Winans, Deceased v. Newfane Rehabilitation & Health Center,* Niagara County Index. No. E169868/2019 (the "Winans Matter") to include the 600+ Mass Tort files. The Plaintiffs made a calculated decision to manipulate the RJI assignment process to get all of their disputes with Defendants assigned to one judge.

Accordingly, Plaintiffs' First and Second Causes of Action in the Cellino Complaint and First Cause of Action in the TBF Complaint must be dismissed. Alternatively, the fee allocations in the Winans Matter should be transferred to the Hon. Frank A. Sedita, the presiding trial court judge, and the jurist totally familiar with all the proceedings in it.

**B. Plaintiffs Fail To State A Cause Of Action For Breach Of Contract.**

To state a cause of action for breach of contract, a plaintiff must allege that: (1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages. *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (internal citations omitted). "In order to state a cause of action to recover damages for a breach contract, the plaintiff's allegations must identify the provisions of

the contract that were breached." *Barker v. Time Warner Cable Inc.*, 83 A.D.3d 750, 751 (2d Dep't 2011) (dismissing cause of action for breach of contract for failure to identify contractual provisions that were breached); *see Woodhill Elec. v. Jeffrey Beamish, Inc.*, 73 A.D.3d 1421, 1422 (3d Dep't 2010) (dismissing cause of action for breach of contract where complaint did not specify the particular terms of the contract that were allegedly breached); *Kraus v. Via Int'l Serv. Ass'n*, 304 A.D.2d 408, 408 (1st Dep't 2003) (dismissing breach of contract claim where "plaintiff failed to allege the breach of any particular contractual provision.").

Here, Plaintiffs state in a conclusory fashion that Defendants have breached their employment agreements with a laundry list of conclusory and wholly unsubstantiated allegations. (*Goldstein Aff.*, Exh. A ¶¶ 118, 131; *Goldstein Aff.*, Exh. B ¶¶ 106, 117. ) Plaintiffs allege in vague terms that Defendants have engaged in "surreptitious solicitation," "pirating," "misappropriating," and "misrepresenting," among other unsubstantiated allegations of misconduct in a desperate attempt to try to get something to stick. (*see id*.). Tellingly, Plaintiffs do not cite <u>any</u> specific provisions of the employment agreements that Defendants allegedly breached, simply because they cannot. Moreover, there are <u>no</u> allegations within the causes of action for breach of contract related to how CL and C&B performed in accordance with the employment agreements. Accordingly, Plaintiffs third and fourth causes of action in the Cellino Complaint and the second and third causes of action the TBF Complaint must be dismissed for failing to meet the most basic pleading requirements for a cause of action for breach of contract.

Further, Defendants' alleged solicitation activity upon which the breach of contract actions are based would not and could not constitute a breach of contract. It is well-established that "[a]s a matter of ethics, departing partners have been permitted to inform firm clients with whom they have a prior professional relationship about their impending withdrawal and new practice, and to remind the client of its freedom to retain counsel of its choice." *See Graubard Mollen Dannett &*

*Horowitz v. Moskovitz*, 86 N.Y. 2d 112, 120 (1st Dep't 1995) (citing New York County Lawyers Assn, Ethics Opn. 679 (1991); Assn of Bar of City of NY, Ethics Opn. 80- 65 (1982)); *see Gibbs v. Breed Abbott & Morgan*, 271 A.D.2d 180, 196 (1st Dep't 2000). Thus, it is wholly ethical for Defendants to solicit clients, and they have not breached their employment contract in any way.

Relatedly, Plaintiffs cannot plead a cause of action for breach of contract based on restrictive covenants because it is well-established that an employment agreement cannot restrict a departing lawyer's right to practice law. Rule 5.6(a)(1) of the New York Rules of Professional Conduct states "A lawyer shall not participate in offering or making a[n] employment . . . that restricts the right of a lawyer to practice after termination of the relationship." Accordingly, allegations in the third and fourth causes of action in the Cellino Complaint and in the second and third causes of action the TBF Complaint are insufficient to withstand a motion to dismiss.

### C. Plaintiffs Fail to State A Cause Of Action For Breach Of Contract As A Third Party Beneficiary.

Plaintiffs' fifth cause of action in the Cellino Complaint and fourth cause of action in the TBF Complaint against Defendants for breach of contract as a third party beneficiary fails to state a cause of action. "[A] third party may sue as a beneficiary on a contract made for [its] benefit. However, an intent to benefit the third party must be shown, and, absent such intent, the third party is merely an incidental beneficiary with no right to enforce the particular contracts." *Port Chester Elec. Constr. Corp. v Atlas*, 40 N.Y.2d 652, 655 (1976) (citations omitted). The Court of Appeals has upheld a third party's right to enforce a contract in two situations: (1) when the third party is the <u>only</u> one who could recover for the breach of contract; or (2) when it is otherwise clear from the language of the contract that there was an intent to permit enforcement by the third party.

*Dormitory Auth. of the State of N.Y. v. Samson Constr. Co.*, 30 N.Y.3d 704, 710 (2018) (citing

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 166 N.Y.2d 38, 45 (1985)).

Here, Plaintiffs have failed to adequately plead a cause of action for breach of contract as

a third party beneficiary. First, the face of the Complaints suggests C&B and TBF, the purported

third party beneficiaries, are not the <u>only</u> parties attempting to recover for the alleged breach of the

employment agreements. Indeed, CL seeks to recover on the same employment agreements.

Second, the clear language of the employment agreements pursuant to which this claim is based

are devoid of <u>any</u> reference to C&B and TBF. Therefore, Goldstein and Greco's employment

agreements make no clear reference that there was ever an intent by Defendants that C&B or TBF

be permitted to enforce whatever unspecified agreements they are invoking. Further, the clients

and Goldstein Greco obviously have no privity with TBF or the dissolved C&B. At most, C&B

and TBF would be incidental beneficiaries, and thus the fifth cause of action and fourth cause of

action in the Cellino Complaint and the TBF Complaint, respectively, must be dismissed.


### D. Plaintiffs Fail To State A Cause Of Action for Tortious Interference with Contract.

The Ninth Cause of Action by CL against Defendants and the Tenth Cause of Action by

C&B against Defendants in the Cellino Complaint and the Sixth and Seventh Causes of Action in

the TBF Complaint alleging tortious interference with contract must be dismissed pursuant to

CPLR § 3211(a)(7), as Plaintiffs do <u>not</u> properly plead such a claim. To state a claim for tortious

interference with contract, a plaintiff must allege: (1) the existence of a valid contract between

plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional

procurement of the third-party's breach of the contract without justification; (4) actual breach of

the contract; and (5) damages resulting therefrom. *Lama Holding Co. v. Smith Barney Inc.*, 88

N.Y.2d 413, 424 (1996).

{9293637:7 }

<u>First</u>, as an initial matter as discussed above, it is well-established that "[a]s a matter of ethics, departing partners have been permitted to inform firm clients with whom they have a prior professional relationship about their impending withdrawal and new practice, and to remind the client of its freedom to retain counsel of its choice." *See Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y. 2d 112, 120 (citing New York County Lawyers Assn, Ethics Opn. 679 (1991); Assn of Bar of City of NY, Ethics Opn. 80- 65 (1982)). Clients are <u>not</u> property of a law firm and are free to leave prior counsel and seek new counsel at any time. *Gibbs v. Breed Abbott & Morgan*, 271 A.D.2d 180, 196 (1st Dep't 2000) (holding clients "are not the exclusive property of the firm with which they are affiliated."). Thus, any allegation that Defendants acted wrongfully by "soliciting" clients (*see Goldstein Aff.*, Exh. A ¶¶ 189, 200) cannot withstand a motion to dismiss; a client's leaving a prior law firm is not beaching its contract with that law firm because any client can ALWAYS discharge counsel in New York.

<u>Second</u>, Plaintiffs do <u>not</u> allege the existence of any specific valid contract <u>nor</u> do they specifically identify any third party with whom they purportedly contracted. Rather, Plaintiffs allege in vague fashion the existence of contracts between Cellino Law "with certain of C&B's clients as well as certain of its own clients," a "contract entered into between C&B and CL," and "contract," and "a contract" between "The Barnes Firm and Cellino Law." (*Goldstein Aff.*, Exh. A ¶¶ 186, 197; *Goldstein Aff.*, Exh. B ¶¶ 165, 166.) The clients are not identified. The purported contracts are not described or specifically identified. Fatally, there is <u>no</u> reference to provisions of the purported contracts that were allegedly breached. Thus, Plaintiffs' allegations are far too vague to state a claim for tortious interference with contract. *Cash on the Spot ATM Servs., LLC v Camia*, 144 A.D.3d 961, 963 (2d Dep't 2016) (dismissing tortious interference with contract claim where "the amended complaint did not identify the contract or contracts that were allegedly interfered with"); *R&R Third Props. v. Greater N.Y. Mut. Ins. Co.*, No. 651377/2013, 2019 N.Y.

Misc. LEXIS 4926, *50 (Sup. Ct. Sept. 9, 2019) (dismissing tortious interference with contract claim where the complaint's reference to contracts with unnamed insurance companies was "too general to support a tortious interference claim"); *Taylor Bldg. Mgt., Inc. v. Global Payments Direct, Inc.*, 19 Misc. 3d 1133(A), 1133A, 866 N.Y.S.2d 96, 96 (Sup. Ct. Mar. 20, 2008) (dismissing tortious interference with contract claim where complaint failed to identify any contracts with third parties); *see also*, *Williams v Citigroup, Inc.*, 104 A.D.3d 521, 522 (1st Dep't 2013) (dismissing tortious interference with contract claim where plaintiff failed to identify any term of the purported third party contract that was allegedly breached).

Plaintiffs' conclusory allegations are wholly devoid of any factual basis, likely because they <u>cannot</u> prove any intentional interference because legal clients can be solicited and are free to choose or discharge their own counsel. Accordingly, the ninth and tenth causes of action in the Cellino Complaint and the sixth and seventh causes of action in the TBF Complaint, must be dismissed.

### E. CL's Twelfth Cause Of Action For Tortious Interference With Business Relationship Must Be Dismissed.

For its Twelfth Cause of Action, CL alleges that the Defendants tortiously interfered with Plaintiffs' business relationships with its clients. A claim for tortious interference with business relations must allege that: (1) plaintiff had business relations with a third-party; (2) defendant interfered with those relations; (3) "*defendant acted with the sole purpose of harming the plaintiff or by using unlawful means*"; and (4) there was resulting injury to plaintiff's business relations. *119 Spring LLC v 119 Spring St. Co., LLC*, 2014 N.Y. Misc. LEXIS 2036, at *20 (N.Y. Sup. Ct. 2014) (emphasis added) (dismissing complaint); *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dep't 2009). In other words, the claim "applies to those situations where the third

party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." *M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488, 490 (2d Dep't 1995) (*quoting WFB Telecommunications v. NYNEX Corp.*, 188 A.D.2d 257, 257 (1st Dep't 1992)).

To satisfy the element of showing a defendant acted intentionally and wrongfully, "the motive for the interference must be *solely malicious*, and the plaintiff has the burden of proving this fact." *M.J. & K. Co.*, 220 A.D.2d at 490 (emphasis added; citation omitted) (affirming dismissal of claim). The requisite showing of "malice" means "that the conduct by defendant that allegedly interfered with plaintiff's prospects was undertaken for the *sole purpose of harming plaintiff.*" *Jacobs v. Continuum Health Partners, Inc.,* 7 A.D.3d 312, 313 (1st Dep't 2004) (emphasis added). It is well-settled "where the offending party's actions are motivated by economic self-interest, they cannot be characterized as solely malicious." *Law Offs. of Ira H. Leibowitz v Landmark Ventures, Inc.*, 131 A.D.3d 583, 586 (2d Dep't 2015).

To that end, the complaint must allege that defendant employed tactics such as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions." *119 Spring LLC,* 2014 N.Y. Misc. LEXIS 2036, at *20 (N.Y. Sup. Ct. Apr. 28, 2014) (*quoting NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 624 (1996); *See Stuart's LLC v. Edelman*, 196 A.D.3d 711, 714 (2d Dep't 2021) (dismissing cause of action for tortious interference with business relationships where trial record reflects a lack of incriminating evidence); *Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 107-08 (1st Dep't 2009) (affirming dismissal of claim where complaint failed to allege that defendants violated the law or undertook actions with the sole purpose of harming plaintiff); *NRT Metals, Inc. v. Laribee Wire, Inc.*, 102 A.D.2d 705, 706 (1st Dep't 1984) (reversing denial of dismissal of claims for tortious interference where "the record discloses no evidence of malice or the use of unlawful means by [defendant], proof of

one or the other being necessary to sustain an action for interference with at-will business relationships"). Persuasive efforts, alone, are insufficient to meet this showing, even if knowingly directed at interference. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1980); *see also Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004); *Posner v. Lewis*, 18 N.Y.3d 566, 570 n.2 (2012); *Aramid Entertainment Fund, Ltd. v. Wimbledon Financing Master Fund, Ltd.*, 105 A.D.3d 682 (1st Dep't 2013); *D.A.M. Prods., Inc. v Torres*, 2017 N.Y. Misc. LEXIS 4014, at *17-18 (N.Y. Sup. Ct. Oct. 18, 2017) (granting motion to dismiss).

Here, without a factual basis, CL alleges in a conclusory fashion that "Defendants used confidential information, trade secrets, and proprietary business information" to solicit clients for their "own personal gain." (*Goldstein Aff.*, Exh. A, ¶¶ 221-223.) Tellingly, the Complaint is devoid of any allegation that Defendants' actions were "solely malicious," and CL admits that the alleged interference with the relationship was at least in part due to self-interest, which motivation cannot support a claim for tortious interference with business relations. Thus, the cause of action fails on that basis alone. Further, the relationships CL had with its clients were at-will, and the clients were allowed to terminate the relationship at any time and choose their own counsel. Here, the evidence on submitted in support of this motion to dismiss demonstrates that Defendants acted amicably and professionally with CL when separating from the law firm. Accordingly, the allegations of wrongful conduct by Defendants lack any factual basis, and the cause of action for tortious interference with business relationship in the Cellino Complaint cannot survive.

**F. CL and C&B's Fifteenth Cause Of Action Must Be Dismissed Because There Is No Private Right Of Action Under N.Y. Gen. Bus. Law § 349.**

CL and C&B's Fifteenth Cause of Action for violation of N.Y. Gen. Bus. Law § 349 must be dismissed for failure to state a cause of action. For a cause of action pursuant to N.Y. Gen. Bus.

Law § 349 to survive, "the gravamen of the complaint must be consumer injury or harm to the public interest." *Ivy League Sch., Inc. v. Danick Indus., Inc.*, 44 Misc. 3d 1223(A) (Sup. Ct., Suffolk County 2014) "Private contract disputes, unique to the parties . . . would not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d, 25 (1995).

Plaintiffs pathetically attempt to state that Defendants have violated the statute by causing consumer confusion from the alleged use of certain of Plaintiffs' Marks. It is clear, however, from the Complaint that this is a private contract dispute between Plaintiffs and Defendants, and the Complaint is devoid of allegations regarding harm to the public at large. Accordingly, the fifteenth cause of action in the Cellino Complaint must be dismissed.

### G. Plaintiffs' Causes Of Action For Unjust Enrichment Are Duplicative Of The Breach Of Contract Claims And Must Be Dismissed.

It is black letter law that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "The theory of unjust enrichment lies as a quasi-contract claim." *Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 (2005). "Unjust enrichment arises from an obligation that the law imposes in the *absence of an agreement* between the parties." *Badding v. Inglis*, 112 A.D.3d 1329, 1331 (4th Dep't 2013) (emphasis added). Indeed, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello*, 18 N.Y.3d at 790.

For their Sixteenth and Nineteenth Causes of Action in the Cellino Complaint and their Ninth Cause of Action in the TBF Complaint, Plaintiffs seek recovery duplicative of the relief sought in the breach of contract claims. Here, the relief they seek is governed by the employment

agreements, and thus a cause of action for unjust enrichment is improper. Accordingly, Plaintiffs'

causes of action for unjust enrichment must be dismissed.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that all but the Seventeenth and

Eighteenth causes of action in the Cellino Complaint and all of the causes of action in the TBF

Complaint be dismissed.

Dated: August 29, 2023                                    Respectfully submitted,

**WOODS OVIATT GILMAN LLP**

By:     _s/ William F. Savino_
                William F. Savino, Esq.
                *Attorneys for Defendants*
                1900 Main Place Tower
                350 Main Street
                Buffalo, New York 14202
                (716) 248-3200
                wsavino@woodsoviatt.com

## CERTIFICATION OF COMPLIANCE WITH WORD COUNT LIMIT

I hereby certify pursuant to Rule 17 of the Rules of Practice for the Commercial Division of the Supreme Court of the State of New York that the total number of words in the foregoing document, exclusive of the caption, table of contents, table of authorities, and/or signature block, is 5,590 according to the "Word Count" function of Microsoft Word, the word-processing system used to prepare the document, and thus that the document complies with the word count limit set forth in Rule 17.

Dated: Buffalo, New York
      August 29, 2023

                                    *s/ William F. Savino*
                                   William F. Savino, Esq.